ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| ASOCIACIÓN CONDÓMINES DEL CONDOMINIO PLAZA DEL PARQUE<br>DEMANDANTE(S)- RECURRIDA (S)<br><br>V.<br><br>**MAPFRE PRAICO INSURANCE COMPANY Y OTROS**<br>DEMANDADA(S)-PETICIONARIA(S) | **KLCE202201337** | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de **SAN JUAN**<br><br>Caso Núm.<br>**SJ2019CV09770 (503)**<br><br>Sobre:<br>Daños y Otros |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez.

Barresi Ramos, juez ponente

**R E S O L U C I Ó N**

En San Juan, Puerto Rico, hoy día 29 de septiembre de 2023.

Comparece ante este Tribunal de Apelaciones, la compañía aseguradora **MAPFRE FRAICO Insurance Company** (**MAPFRE**) mediante *Petición de Certiorari* incoada el 8 de diciembre de 2022. En su recurso, nos solicita que revisemos la *Orden* decretada el 22 de agosto de 2022, por el Tribunal de Primera Instancia, Sala Superior de San Juan.[1] Mediante el referido dictamen, entre otras cosas, el foro primario requirió a **MAPFRE** culminar el proceso de ajuste de la reclamación dentro del término perentorio de treinta (30) días.

Exponemos el trasfondo fáctico y procesal que acompaña la presente controversia.

---

[1] Esta determinación judicial fue notificada y archivada en autos el 23 de agosto de 2022. Véase, Apéndice de la *Petición de Certiorari*, págs. 57- 58.

Número Identificador:
RES2023_____

- I -

Para la fecha del paso del huracán María por Puerto Rico, la **Asociación de Condómines del Condominio Plaza del Parque** (**Asociación de Condómines**) mantenía una póliza de seguros, núm. 1600178001408, con **MAPFRE** cuya efectividad era desde el 21 de febrero de 2017 hasta el 21 de febrero de 2018. La cubierta de la póliza incluía los daños sufridos a la propiedad, sujeto a los términos, límites monetarios, condiciones y exclusiones de la misma.

Como consecuencia del huracán María, el 18 de septiembre de 2019, la **Asociación de Condómines** presentó una *Demanda* sobre incumplimiento de contrato. En la reclamación, alegó que el Condominio Plaza del Parque sufrió daños a la propiedad que ascendían a casi dos millones de dólares ($2,000,000.00).[2] Además, adujo que su reclamación número 20171273653 no fue atendida adecuadamente por la aseguradora **MAPFRE** provocándole así mermas económicas, por lo que solicitó el cumplimiento específico del contrato.

El 28 de febrero de 2020, **MAPFRE** presentó su *Contestación a Demanda* conteniendo sus *Defensas Afirmativas*.[3] Negó la mayoría de las alegaciones contenidas en la *Demanda,* así como que le causara daño alguno a la **Asociación de Condómines**. Al mismo tiempo, solicitó al foro primario declarar no ha lugar la *Demanda* de la **Asociación de Condómines** y le ordenara el resarcimiento de los gastos, costas y honorarios de abogado.

El 7 de junio de 2021, ROV Engineering (ROV) suscribió un *Informe Pericial,* luego de haber inspeccionado las facilidades de ciertos apartamentos a los cuales se le autorizó la entrada, conteniendo un estimado de daños por la cantidad de $201,947.01.[4] Al ajustar dicha reclamación, no se emitió pago alguno. Es menester señalar que, al momento de la inspección, la **Asociación**

---

[2] Véase, Apéndice de la *Petición de Certiorari*, págs. 1-9.
[3] *Íd.*, págs. 10-18.
[4] Véase, Apéndice de *Oposición a Recurso de Certiorari* págs. 34-40.

**de Condómines** contaba con un informe pericial realizado por su perito, notificado el 19 de octubre de 2020, el cual valoraba los daños en $791,843.65.

El 13 de julio de 2022, la **Asociación de Condómines** presentó una *Moción Solicitando Orden Sobre el Proceso de Investigación y Ajuste*.[5] Interpeló que se le ordenara a **MAPFRE** ajustar el estimado de los daños, y pagar la suma que resultara del mismo. Además, pidió en la alternativa, se determinará que el estimado de daños de **MAPFRE** constituyera el ajuste y se le ordenara pagar la cuantía de $201,947.01 a la **Asociación de Condómines** ello como adelanto de las sumas que no estaban en disputa. Sin que representara una renuncia a proseguir con el caso sobre las cuantías adicionales a las que tuviere derecho.

El 2 de agosto de 2022, **MAPFRE** presentó su *Oposición a Solicitud de Orden sobre Proceso de Investigación y Ajuste*.[6] **MAPFRE** arguyó que la solicitud de la **Asociación de Condómines** no procedía, por no tratarse de una deuda líquida. Asimismo, alegó que dado al hecho de que el caso se encontraba en la etapa de descubrimiento de prueba, no tenía una obligación de proveer un ajuste.

El 22 de agosto de 2022, el foro primario dictaminó la *Orden* recurrida. Además, determinó que una vez se notificara el ajuste, **MAPFRE** procediera a pagar la suma que surgiera de su evaluación dentro del término de quince (15) días y se considerara como adelanto.

El 7 de septiembre de 2022, **MAPFRE** presentó una *Moción de Reconsideración*.[7] Manifestó que existe controversia sobre el monto, si alguno, que deberá pagar de probarse la pérdida alegada y de estar cubierta por la póliza. Poco después, el 25 de octubre de 2022, la **Asociación de Condómines** presentó *Réplica a Moción de Reconsideración*, haciendo constar que aun cuando no se ha concluido el descubrimiento de prueba ello no implica una limitación para que se emita el ajuste y se adelante el pago

---

[5] Véase, Apéndice de la *Petición de Certiorari*, págs. 19-39.
[6] *Íd.*, págs. 40-56.
[7] *Íd.*, págs. 60- 64.

que resulte de su valoración de los daños.[8] El 14 de noviembre de 2022, el tribunal primario declaró **No Ha Lugar** la reconsideración.[9]

Inconforme con dicho dictamen, el 8 de diciembre de 2022, **MAPFRE** presentó ante este Tribunal de Apelaciones una *Petición de Certiorari.* En su escrito, señala los siguientes errores:

> Erró como cuestión de derecho el TPI al ordenar que se ajustara el estimado de daños y se pagara a Plaza del Parque Court la suma resultante.

> Erró el TPI al resolver que procedía el pago parcial inmediato de la cantidad del ajuste del informe pericial a Plaza del Parque, a base de lo resuelto en varios casos del Tribunal de Apelaciones que no son finales y firmes, y que se fundamentan en una interpretación equivocada de la decisión de Carpets & Rugs vs. Tropical Reps., 175 DPR 615 (2009).

El 13 de diciembre de 2022, intimamos *Resolución* en la cual, entre otras cosas, concedimos un plazo de diez (10) días a la **Asociación de Condómines** para mostrar causa por la cual no debíamos expedir el auto de *certiorari* y revocar el dictamen impugnado. El día 14 de diciembre de 2022, la **Asociación de Condómines**, presentó su *Oposición a Recurso de Certiorari*.

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Presentamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A -

El auto de *certiorari* es el vehículo procesal extraordinario disponible para que un tribunal apelativo pueda corregir un error de derecho cometido por un tribunal inferior.[10] "La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos".[11] Aun así, nuestra discreción para expedir

---

[8] Véase, Apéndice de la *Petición de Certiorari*, págs. 65- 73.
[9] *Íd.*, págs. 81- 82.
[10] *800 Ponce de León Corp. v. AIG*, 205 DPR 163, 174 (2020); *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 728 (2016).
[11] *IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012).

un auto de *certiorari* no se extiende a cualquier situación procesal, ni abarca todo tipo de materias.

La Regla 52.1 de las de Procedimiento Civil de 2009 prescribe las instancias en que este foro apelativo puede revisar vía *certiorari* las resoluciones y órdenes emitidas por los tribunales de primera instancia.[12] En lo pertinente, dicha Regla dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[13] Estos criterios son los siguientes:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es

---

[12] 32 LPRA Ap. V, R. 52.1.
[13] 4 LPRA Ap. XXII-B, R. 40. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Es preciso aclarar que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[14] Esto es, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[15] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari.*[16]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[17] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[18]

- **B** -

En reiteradas ocasiones, nuestro más alto foro ha reconocido que la industria de seguros en Puerto Rico está investida de un alto interés público debido al gran papel que juega en la protección de los riesgos que amenazan la vida o el patrimonio de la ciudadanía.[19] Los seguros cumplen una función social importante al atenuar los riesgos inherentes a las relaciones comerciales mientras que promueven el crecimiento estable de la economía.[20]

---

[14] *García v. Padró,* 165 DPR 324, 335 esc. 15 (2005).
[15] *Torres Martínez v. Torres Ghigliotty,* supra.
[16] *Feliberty v. Soc. de Gananciales,* 147 DPR 834, 837 (1999).
[17] *García v. Asociación,* 165 DPR 311, 322 (2005).
[18] *Lluch v. España Sta.,* 117 DPR 729, 745 (1986).
[19] *W.M.M., P.F.M. v. Puerto Rico Christian School,* 2023 TSPR 48, 211 DPR ___ (2023), citando a *San Luis Center Apts. et. al. v. Triple-S,* 208 DPR 824, 831 (2022).
[20] *Íd.,* citando a *Rivera Matos et. al. v. Triple-S et. al.,* 204 DPR 1010, 1019 (2020).

Debido a su trascendencia, esta industria ha sido extensamente reglamentada mediante el Código de Seguros de Puerto Rico, conocida como la Ley Núm. 77 de 19 de junio de 1957, según enmendada, y a su vez se encuentra sujeta a las disposiciones del Código Civil de Puerto Rico, de manera supletoria.[21]

En específico, el Artículo 1.020, define seguro como "el contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio especifico o determinable al producirse un suceso incierto previsto en el mismo".[22] Así, las personas y los negocios pueden proteger sus recursos al transferir el impacto monetario de ciertos riesgos a cambio del pago de una prima.[23]

Por otra parte, en cuanto a la interpretación del contrato de seguros, el propio Código de Seguros de Puerto Rico, implanta como norma de hermenéutica que "[t]odo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta". Nuestro Tribunal Supremo ha resuelto que el contrato de seguros es un contrato de adhesión, pues el asegurador es quien redacta el contrato en su totalidad.[24] Es por esto que debe interpretarse liberalmente en beneficio del asegurado.[25]

Cuando se produce un suceso incierto previsto en el contrato de seguros, suelen suscitarse controversias.[26] Ante esta realidad, al momento de interpretar las cláusulas, los términos y las condiciones, hay que tener presente que los contratos de seguro – al igual que todos los contratos –

---

[21] *Íd.*; *Feliciano Aguayo v. MAPFRE*, 207 DPR 138, 148. (2021); 26 LPRA sec. 101 *et. set.*

[22] 26 LPRA sec. 102.

[23] *W.M.M., P.F.M. v. Puerto Rico Christian School,* supra; *R.J. Reynolds v. Vega Otero*, 197 DPR 699, 706 (2017); *Maderas Tratadas v. Sun Alliance et. al.*, 185 DPR 880, 897 (2012).

[24] *Feliciano Aguayo v. MAPFRE*, supra, pág. 151.

[25] *W.M.M., P.F.M. v. Puerto Rico Christian School,* supra.; *San Luis Center Apts. et. als. v. Triple-S,* supra.

[26] *Feliciano Aguayo v. MAPFRE*, supra, pág. 151; *SLG Francis-Acevedo v. SIMED, 176 DPR 372, 385- 386 (2009)*

constituyen la ley entre las partes y, consecuentemente, obligan.[27] Ante la ocurrencia del suceso incierto previsto en el contrato, el asegurado debe presentar su reclamación y la aseguradora está obligada a resolverla. En particular, el Artículo 27.162 del Código de Seguros de Puerto Rico dispone que la aseguradora debe realizar la investigación, el ajuste y la resolución de la reclamación en el periodo razonablemente más corto dentro de los noventa (90) días después de al reclamación.[28]

En lo pertinente a la controversia ante nuestra consideración, el paso del Huracán María y los estragos que causó alteraron el modo de vida de los puertorriqueños.[29] Al recibir constantes quejas del consumidor relativas al proceso de reclamo, evaluación de daños y pago por parte de las aseguradoras, el legislador creó la *Carta de Derechos del Consumidor de Seguros*. Esto, con el fin de facilitar que los consumidores conocieran sus derechos fundamentales enunciados en el Código de Seguros de Puerto Rico y su Reglamento.[30] En lo pertinente, expresa lo siguiente:

> "El Consumidor de Seguros de Puerto Rico disfrutará de todos los derechos que le son reconocidos en las leyes y reglamentos que le sean aplicables, incluyendo, pero sin limitarse a los siguientes:
>
> (a) Derecho a elegir al asegurador e intermediario de seguros de su preferencia.
>
> [...]
>
> (e) Derecho a que quien le gestiona su póliza le provea una orientación clara y completa sobre la cubierta, beneficios, límites y exclusiones de la póliza, así como los deberes y obligaciones del asegurado.
>
> [...]
>
> (i) **Derecho a que el asegurador actúe de buena fe, de forma justa y equitativa al evaluar y resolver su reclamación**.
>
> (j) Derecho a que el asegurador **le envíe su oferta con desglose del ajuste para su evaluación, antes de recibir un cheque que usted no ha aceptado, o concurrentemente**

---

[27] *SLG Francis-Acevedo v. SIMED*, supra, pág. 386.;
[28] 26 LPRA sec. 2716b
[29] Véase, *Exposición de Motivos* de la Ley Núm. 14 de 4 de enero de 2020, mejor conocida como *Ley para añadir un nuevo Artículo 1.120 a la Ley Núm. 77 de 1957, Código de Seguros de Puerto Rico*. Carta de Derechos del Consumidor de Seguros.
[30] Véase, *Exposición de Motivos* de la Ley Núm. 14-2020.

**con el cheque, sin que se entienda que el simple recibo del mismo significa una renuncia a sus reclamaciones**.

[...]

(p) Derecho a radicar una **solicitud de investigación** ante el Comisionado de Seguros.

[...]"[31] (Énfasis nuestro)

El Código de Seguros de Puerto Rico promulga las prácticas desleales y fraudes en el negocio de los seguros.[32] Dentro de sus regulaciones, referente al ajuste de las reclamaciones, el Artículo 27.161 expone, en lo pertinente, lo siguiente:

"En el ajuste de reclamaciones ninguna persona incurrirá o llevará a cabo cualquiera de las siguientes prácticas desleales: [...]

**(3)** Dejar de adoptar e implementar métodos razonables para la rápida investigación de las reclamaciones que surjan bajo los términos de una póliza.

**(4)** Rehusar pagar una reclamación sin llevar a cabo una investigación razonable basada en la información disponible.

[...]

**(6)** No intentar de buena fe llevar a cabo un ajuste rápido, justo y equitativo de una reclamación de la cual surja claramente la responsabilidad.

[...]

**(13)** Negarse a ofrecer una explicación razonable de los términos de una póliza en relación con los hechos y la ley aplicable, para la denegación de una reclamación o de una oferta de transacción.

[...]

El Artículo 27.162 del referido Código decreta el término con el que cuentan las aseguradoras para la resolución de las reclamaciones.[33] En lo pertinente establece que:

(1)     La investigación, ajuste y resolución de cualquier reclamación se hará en el período razonablemente más corto dentro de noventa (90) días después de haberse sometido al asegurador la reclamación.
(2)     En el caso de que un asegurador no pueda resolver una reclamación en el término establecido en el inciso (1) de este

---

[31] Véase, Artículo 1.120 del Código de Seguros, 26 LPRA sec. 118.
[32] *Comisionado de Seguros v. PRIA*, 168 DPR 659, 671 (2006).
[33] 26 LPRA sec. 2716b.

Artículo, deberá mantener en sus expedientes los documentos que acrediten la existencia de justa causa para exceder el término anteriormente dispuesto.

(3)     El Comisionado en cualquier momento podrá ordenar la resolución inmediata de cualquier reclamación si considera que se está dilatando o retrasando indebida e injustificadamente la resolución de la misma.

Finalmente, el Artículo 27.163 del precitado Código implanta los métodos en que una reclamación de un asegurado se puede resolver.[34] Estas son:

1)     El pago total de la reclamación.
2)     La denegación escrita y fundamentada de la reclamación.
3)     El cierre de la reclamación por inactividad del reclamante cuando el reclamante no coopere o no entregue la información necesaria para que el asegurador pueda ajustar la reclamación.

### - III -

En el presente caso, **MAPFRE** solicita se revoque parcialmente la *Orden* del foro primario en la cual se le impone la obligación de pagar la suma resultante del ajuste contenido en el informe pericial, dado que alega que ello no encuentra aval en las disposiciones del Código de Seguros de Puerto Rico, ni en el Código Civil de Puerto Rico. Además, fundamenta su posición en que la **Asociación de Condómines** no ha aceptado el ajuste a realizarse, por lo que no se podría considerar que pondría fin a la reclamación en su totalidad. En otras palabras, aduce que el estimado, una vez ajustado, no podría considerarse como una cuantía líquida porque no habría concurso entre las partes respecto a que es lo que se está liquidando con la referida suma, como tampoco lo hay en cuanto a la extensión de los daños incluidos en el estimado o valoración preparado por los peritos de **MAPFRE**.

La deuda objeto de controversia es una ilíquida, dado que el monto de la reclamación no se ha fijado por la cubierta de la póliza. Esto ocurre porque la cantidad de la pérdida potencialmente cubierta por el contrato de seguro de vivienda naturalmente no está fijada ni acordada exactamente en el contrato.[35] La oferta que circula la aseguradora tras el ajuste se trata de un

---

[34] 26 LPRA sec. 2716c.
[35] *Feliciano Aguayo v. MAPFRE*, supra, pág. 193.

estimado razonable de los daños que entiende que están cubiertos. Esa estimación está sujeta a la impugnación del asegurado mediante una solicitud de reconsideración. Al momento de enviarse ese estimado, el asegurado no ha aceptado la cantidad como correcta, dejando activo el riesgo de una controversia relacionada a la cuantía procedente.[36] En todo caso, la deuda se tornaría líquida cuando ambas partes se ponen de acuerdo sobre cuánto es la cantidad exacta y correcta para satisfacer la reclamación.[37]

En el caso ante nuestra consideración, la **Asociación de Condómines** había presentado con anterioridad un informe pericial en el cual se determinó que los daños ascendían a $791,843.65. Posteriormente, **MAPFRE** presentó un informe pericial realizado por ROV, el cual contenía un estimado de daños que no había sido ajustado ni presentado como oferta de pago. La **Asociación de Condominios** entendió que dicha cantidad no cumplía con la totalidad de su reclamación, por lo que solicitó el ajuste de la misma. No surge del expediente judicial ni de las alegaciones de las partes que **MAPFRE** en algún momento había ofrecido esa cantidad establecida en el informe pericial como una oferta de pago y/o como ajuste. Al contrario, la misma **Asociación de Condómines** reconoció que no se consideraba una oferta de pago, y **MAPFRE** se negó a realizar el ajuste hasta tanto culminara el descubrimiento de prueba. Además, no surge del expediente la fecha de reclamación por parte de la **Asociación de Condómines** a **MAPFRE** para poder determinar el tiempo que ha transcurrido desde dicha fecha hasta el día de hoy.

Como expusimos, este Tribunal de Apelaciones no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o actuó con prejuicio o parcialidad, o se equivocó en la interpretación o aplicación de cualquier

---

[36] *Íd.*, pág. 194.
[37] *Íd.*

norma procesal o de Derecho sustantivo, y nuestra intervención en esa etapa evitará un perjuicio sustancial.

Evaluados los criterios establecidos en la Regla 52.1 de las de Procedimiento Civil de 2009, *supra*, y la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, consideramos que la etapa del procedimiento en que se presenta este recurso de *Certiorari* no es la más propicia para su consideración. **MAPFRE** y la **Asociación de Condómines** tampoco han demostrado que el foro de instancia actuó con pasión, prejuicio, parcialidad o que incurrió en error manifiesto.

Aclaramos que lo que aquí disponemos de ninguna forma debe interpretarse como una adjudicación final sobre la corrección o no de la determinación realizada por el tribunal *a quo*, como tampoco sobre los méritos de lo planteado por las partes en sus respectivos escritos.

En conclusión, nada en el expediente nos convenció para utilizar nuestra función revisora en esta etapa de los procedimientos. Además, nada nos movió para inmiscuirnos en el manejo del caso y en la discreción del(de la) juez quien maneja el caso. De igual modo, no observamos ningún error de parte del foro primario al emitir la *Orden* recurrida. Empero, nada impide que cualquiera de las partes acuda nuevamente ante nos, si lo estima necesario, cuando se adjudique el caso en los méritos.

- III -

Por los fundamentos antes expuestos, ***denegamos*** la expedición del auto de *Certiorari* instado el 8 de diciembre de 2022 por **MAPFRE**, de conformidad con la Regla 52.1 de las de Procedimiento Civil de 2009, *supra,* y la Regla 40 del Tribunal de Apelaciones, *supra*.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón disiente con la determinación sin opinión escrita

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones